UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF

Case No. 3:24-mj-1356-SJH

MIGUEL TOJIN-TOJIN
Material Witness

## UNITED STATES' APPLICATION FOR ISSUANCE OF MATERIAL WITNESS ARREST WARRANT

The United States of America, by the undersigned Assistant United States Attorney, hereby applies pursuant to 18 U.S.C. § 3144 for issuance of a warrant for the arrest of MIGUEL TOJIN-TOJIN as a material witness in the criminal proceedings of United States v. Hua Yao Ke, Case No. 3:24-mj-354-SJH.  For the reasons set forth in the attached affidavit, the testimony of TOJIN-TOJIN is material in the criminal proceedings against Ke and it would be impracticable to secure his presence by subpoena.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:  _____
ARNOLD B. CORSMEIER
Assistant United States Attorney
Florida Bar No. 869139
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone:  (904) 301-6300
Facsimile:   (904) 301-6310
E-mail:      chip.corsmeier@usdoj.gov

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND MATERIAL WITNESS WARRANTS

I, Matthew A. Zetts Jr., being a duly sworn and appointed Border Patrol

Agent of the United States Department of Homeland Security, Customs and Border

Protection, United States Border Patrol, hereby state as follows:

1.      Your affiant has been a Border Patrol Agent for over fifteen years.

Your affiant has training and experience in the enforcement of the immigration and

nationality laws of the United States.  Your affiant also has training and experience

in the preparation, presentation, and service of criminal complaints, arrest warrants,

and search warrants.

2.      The statements contained in this affidavit are based on your affiant's

personal knowledge as well as information provided by other law enforcement

officers.  Your affiant has not included in this affidavit each and every fact and

circumstance known to him regarding the investigation but has set forth sufficient

facts to establish probable cause to believe that from no later than in or about June

2023 through on or about August 14, 2024, in the Middle District of Florida, **HUA**

**YAO KE** harbored aliens who were unlawfully present in the United States, for

commercial advantage and private financial gain, in violation of 8 U.S.C.

§ 1324(a)(1)(A)(iii) and (a)(1)(B)(i).

3.      This affidavit also sets forth probable cause to believe that the testimony

of **MIGUEL TOJIN-TOJIN**, a citizen of Guatemala, **CARLOS TOJIN-TUM**, a

citizen of Guatemala, and **SANDHYA KC**, a citizen of Nepal, is material in the

criminal proceedings against KE, that it would be impracticable to secure their presence by subpoena, and that therefore material witness warrants should be issued to secure their presence, pursuant to 18 U.S.C. § 3144.

4.      On May 9, 2023, Homeland Security Investigations (HSI) received a tip from a concerned citizen.  The tipster said that the a residence located at 12614 Ashglen Drive South, Jacksonville, Florida 32224 (hereinafter RESIDENCE), was being used to house approximately 10 to 13 people who were potentially being forced to work at a restaurant known as Kamiya 86 Sushi and Thai located at 2 Fairfield Blvd. #8, Ponte Vedra Beach, Florida 32082 (hereinafter K86PV).  On May 11, 2023, HSI Special Agent James Burns related the tip to your affiant.  On June 9, 2023, your affiant contacted the tipster, who was identified as an individual with the initials A.L. who lived near the RESIDENCE.[1]  A.L. stated that a white 2020 Chevrolet Express van with a Florida license plate number of 32BXDH  (hereinafter VEHICLE) picked up the residents every day at approximately 10:30 a.m. and brought them back to the RESIDENCE at approximately 11:00 p.m.  A.L. said that approximately a year earlier a Hispanic male who resided at the RESIDENCE appeared to be intoxicated and harassed people in the neighborhood.  He said that the incident had been reported to the Jacksonville Sheriff's Office.

---

[1]      Your Affiant is aware of the full name of A.L. but has used initials in this affidavit to avoid A.L.'s name being disclosed to the subjects of the investigation, who may have a motive to retaliate against A.L. for making a report to law enforcement.

5.      On June 9, 2023, your affiant conducted surveillance and made video recordings at the RESIDENCE.  At approximately 10:30 a.m., the VEHICLE parked in front of the RESIDENCE.  Approximately eight adult males exited the RESIDENCE, opened the garage, and retrieved boxes to load into the VEHICLE. They then got into the VEHICLE and it left the area.  The VEHICLE had a Florida license plate number of 32BXDH.  Your affiant queried the Florida Department of Motor Vehicles Driver and Vehicle Information Database (DAVID) and the records reflected that the registered owner of the VEHICLE was **HUA YAO KE** with an address of 12104 Emerald Green Ct., Jacksonville, Florida 32246.  Your affiant queried DAVID again on July 26, 2024, and the records reflected the same information that they reflected as a result of the query your affiant made in June 2023.

6.      Your affiant queried the U.S. Customs and Border Protection Super Query database for information about **KE** and the records reflected that **KE** was a Lawfully Admitted Permanent Resident (LAPR) in the United States who was born in China.  Your affiant queried the Duval County Property Appraiser web site and the records reflected that **KE** was the owner of the RESIDENCE and also owned the residence at 12104 Emerald Green Ct., Jacksonville, Florida 32246.  Your affiant queried a Jacksonville Electric Authority (JEA) database and the records reflected that **KE** was the owner of the JEA account for the RESIDENCE with a service start date of December 17, 2021.  On July 30, 2024, your affiant queried each of these

3

databases again and the records reflected the same information that they reflected as a result of the queries your affiant made in June 2023.

7.      On June 12, 2023, your affiant conducted surveillance and made video recordings at the RESIDENCE.  At approximately 10:30 a.m., the VEHICLE arrived and picked up six adult males.  The VEHICLE left the RESIDENCE and your affiant followed it in his vehicle.  At approximately 10:55 a.m., the VEHICLE parked behind K86PV.  Your affiant observed all of the VEHICLE's occupants go into a rear entrance of the restaurant.  Your affiant queried the Florida Division of Corporations web site (www.sunbiz.org) and the records reflected that **KE** was the registered agent and president of K86PV, doing business as H & KE Group Inc., which was first registered with the State of Florida on February 27, 2019.

8.      During additional surveillance conducted by your affiant on numerous occasions, your affiant observed and video recorded groups of approximately five to eleven individuals who appeared to be Hispanic or Asian emerge from the RESIDENCE and/or arrive at K86PV.  On every occasion, the VEHICLE was used to transport the individuals from the RESIDENCE to K86PV, where the individuals went into the rear entrance of K86PV.  Your affiant and other agents surveilled and video recorded the movement of workers either to or from the RESIDENCE or to or from K86PV on the following dates:

- June 9, 2023
- June 12, 2023

4

- June 20, 2023

- June 22, 2023

- July 3, 2023

- July 9, 2023

- August 11, 2023

- August 18, 2023

- September 14, 2023

- October 13, 2023

- November 7, 2023

- April 8, 2024

- July 18, 2024

- August 8, 2024

9.      On June 13, 2023, at approximately 7:40 a.m., your affiant drove by the

residence at 12104 Emerald Green Ct., Jacksonville, Florida 32246.  Your affiant

observed that the VEHICLE was parked in front of the residence.  At approximately

8:01 a.m., your affiant drove by a residence at 4420 Naranja Dr. South, Jacksonville,

Florida 32217.  A.L. had told your affiant that he had seen a silver Toyota with

Florida license plate number IFPP12 parked at the RESIDENCE.  Your affiant had

queried DAVID and the records reflected that the registered address of the silver

Toyota was 4420 Naranja Dr. South, Jacksonville, Florida 32217.  When your

affiant drove by the residence at that address, he observed a black Chevrolet vehicle

5

with Florida license plate number Y518RS at the address. Your affiant queried

DAVID and the records reflected that the Chevrolet vehicle was registered to

Franciso Tiu-Tiu with a date of birth in June 1996. Your affiant knows that

Francisco Tiu-Tiu is an alias used by Francisco Tojin-Mejia because on May 11,

2022, Tojin-Mejia was arrested by your affiant during a search conducted at another

restaurant that was being investigated for harboring alien workers. Your affiant has

reviewed immigration records that reflect that Tojin-Mejia is a Guatemalan national

who is illegally present in the United States.

10.     On August 18, 2023, at approximately 9:55 a.m., your affiant observed,

and video recorded the VEHICLE arriving at 12104 Emerald Green Ct.,

Jacksonville, Florida 32246. Individuals exited the VEHICLE and went inside the

residence for approximately 25 minutes. Subsequently, a female exited the residence

and got in the driver's seat of the VEHICLE while another person got in the front

passenger seat, and the VEHICLE left the residence. There were no other visible

occupants. Your affiant drove to K86PV and at approximately 10:54 a.m., your

affiant observed and video recorded the VEHICLE arriving in the alley behind

K86PV. Your affiant observed four Asian males, three Asian females, and four

Hispanic males exit the VEHICLE. The passengers unloaded boxes from the van

and entered K86PV. Your affiant later reviewed the video recording and identified

the driver as **KE**.

11.     On October 10, 2023, your affiant asked HSI Auditor Jennifer Macrine

to obtain payroll records for K86PV from the State of Florida. Auditor Macrine

6

requested and obtained Reemployment Assistance Tax (RT-6) reports for the first quarter of 2023 through the third quarter of 2023. On October 24, 2023, Auditor Macrine provided your affiant with these RT-6 reports, which your affiant reviewed. **KE** was listed on every RT-6 quarterly report for the period of January 1, 2023, through September 30, 2023.

12.    On November 7, 2023, your affiant requested the assistance of the St. Johns County Sheriff's Office (SJSO) to perform a traffic stop on the VEHICLE after it departed the RESIDENCE and before it arrived at K86PV. Your affiant made this request to try to identify individuals currently employed at K86PV and to determine these employees' current immigration status. On November 7, 2023, an SJSO deputy conducted the requested traffic stop and obtained identifying information for the individuals in the VEHICLE, which he later provided to your affiant. On November 20, 2023, your affiant obtained and reviewed the body camera recording of the stop from SJSO. The recording shows the SJSO deputy asking the driver, identified as **KE,** "who is in the back" of the vehicle. **KE** replied, "my employees."

13.    On December 15, 2023, your affiant queried the Super Query database for the identified individuals and learned the following:

1.  Driver: **HUA YAO KE**; Date of Birth (DOB): ▮▮▮▮1986[2]; Country of Citizenship (COC): China; Immigration Status: Lawful Alien Permanent Resident (LAPR); **KE** provided a Florida driver's license as identification, number ▮▮▮▮▮-201-0.

2.  Front Passenger: Feng Chen; DOB: ▮▮▮▮1990; COC: China; Immigration Status: LAPR; CHEN provided a New York driver's license as identification, number ▮▮▮▮-878.

3.  Rear Passenger: Ye Sun; DOB: ▮▮▮▮1982; COC: China; Immigration Status: Alien with employment authorization valid until June 14, 2024; Sun provided a U.S. Employment Authorization card as identification, number ▮▮▮▮776.

4.  Rear Passenger: Elias Reynaldo Lopez-Imul; DOB: ▮▮▮▮1996; Immigration Status: None; Lopez provided a Guatemalan driver's license as identification, number ▮▮▮▮1-1416.

5.  Rear Passenger: Manuel Ricardo Tojin-Tum; DOB: ▮▮▮▮2005; Immigration Status: None; Manuel Tojin-Tum had no identification.

---

[2]     Your affiant knows the complete dates of birth and other personally identifying information described in this affidavit but has redacted that information to keep it out of the public record.

6.    Rear Passenger:  Carlos Humberto Tojin-Tum; DOB:

████1987; Immigration; Status: None; Carlos Tojin-Tum

provided a Guatemalan driver's license as identification, number

██████4-1416.

14.    Based on the foregoing information and your affiant's training and experience, your affiant believes that Lopez-Imul, Manuel Tojin-Tum, and Carlos Tojin-Tum were unlawfully present in the United States and therefore were not legally authorized to reside or work in the United States.

15.    Your affiant compared the names of the individuals identified at the SJSO traffic stop to the names listed on the RT-6 reports. **KE**, Chen, and Sun were listed on the reports.  Manual Ricardo Tojin-Tum and Carlos Humberto Tojin-Tum were listed on the reports as Ricardo Tojin and Carlos Humberto.  Manual Ricardo Tojin-Tum and Carlos Humberto Tojin-Tum did not have authorization to work in the United States at that time.  Lopez-Imul was not listed on any of the reports.

16.    Based upon your affiant's training and experience, including previous investigations of restaurant operators who harbored undocumented alien workers, your affiant knows that restaurant operators often provide a residence or residences to house the aliens.  Rooms in these residences that are not usually used as bedrooms, such as living rooms and dining rooms, are often divided into additional rooms through the use of temporary walls.  These "bedrooms" are usually sparsely furnished, and the aliens often sleep on the floor.  The aliens maintain their

belongings, sometimes including passports or other identification documents, in these rooms.

17.     Your affiant also knows that businesses are required under the law to complete and maintain a Form I-9, Employment Eligibility Verification, for each employee.  All employees—citizens and non-citizens—are required to complete Section 1 of a Form I-9 at the time of hire.  In Section 1, the employee provides information to establish that they are legally permitted to work in the United States. The employer is required to complete Section 2 certifying that the employer has examined the documents the employee presented as proof of the right to work in the United States within three business days after the date of employment.  After the completion of the Form I-9, employers must make this form available for inspection by ICE officers and employees of the Department of Labor.

18.     On August 12, 2024, your affiant applied for and obtained search warrants from this Court authorizing the search of K86PV (Case No. 3:24-mj-1339-PDB), the RESIDENCE (Case No. 3:24-mj-1341-PDB), and the VEHICLE (Case No. 3:24-mj-1340-PDB).

19.     On the morning of August 14, 2024, agents conducting surveillance observed the VEHICLE leaving the residence at 12104 Emerald Green Ct. Jacksonville, Florida 32246.  They observed an Asian male driving the VEHICLE and an Asian female in the front passenger seat.  A few minutes later, other agents conducting surveillance at the RESIDENCE observed the VEHICLE pull up in front of the RESIDENCE.  Six individuals came out of the RESIDENCE and entered the

10

VEHICLE, which then departed the residence, and agents followed it as it traveled to K86PV. An officer with the St. Johns County Sheriff's Office stopped the VEHICLE as it entered the rear parking lot of K86PV for speeding and failing to stop at a stop sign. After the VEHICLE was stopped, three Border Patrol Agents went to the scene to question the occupants about their citizenship and immigration status.

20.    The eight occupants of the vehicle were identified as follows:

    1.    Driver: Duo Ping Ke; Country of Citizenship (COC): China; Immigration Status: Lawfully Admitted Permanent Resident (LAPR).

    2.    Front Passenger: Feng Chen; COC: China; Immigration Status LAPR.

    3.    Rear Passenger: Qizhong Guo; COC: China; Immigration Status: work authorization.

    4.    Rear Passenger: Jiajian Zheng; COC: China; Immigration Status: no work authorization.

    5.    Rear Passenger: Rosa Miguelina Mena-Mella; COC: Dominican Republic; Immigration Status: work authorization.

    6.    Rear Passenger: Rigoberto Tzunux-Us; COC: Guatemala; illegally present in the United States with no work authorization.

    7.    Rear Passenger: **MIGUEL TOJIN-TOJIN**; COC: Guatemala; illegally present in the United States with no work authorization.

11

8.     Rear Passenger: **CARLOS TOJIN-TUM**; COC: Guatemala;

illegally present in the United States with no work authorization.

Zheng, Tzunux-Us, Tojin-Tojin, and Tojin-Tum were administratively arrested and

transported to the Jacksonville Border Patrol Station for immigration processing.

21.    On August 14, 2024, agents executed the search warrants for K86PV,

the RESIDENCE, and the VEHICLE.  At the RESIDENCE, agents encountered an

individual as she left the RESIDENCE and entered a vehicle parked in the driveway.

She identified herself as **SANDHYA KC** and agents questioned her about her

citizenship and immigration status and found that she was a citizen of Nepal who

was illegally present in the United States.  She was administratively arrested and

transported to the Jacksonville Border Patrol Station for immigration processing.

22.    Inside the residence, agents encountered an individual who identified

himself as Ricardo Tojin-Tum.  Agents questioned him about his citizenship and

immigration status and found that he was a citizen of Guatemala who was illegally

present in the United States.  He was administratively arrested and transported to the

Jacksonville Border Patrol Station for immigration processing.

23.    During the search of the RESIDENCE, agents observed the following.

Several rooms had multiple beds, including the living room which was converted

into a bedroom with four beds made out of plywood.  Several rooms had suitcases.

Multiple pairs of shoes were lined up in the entry hallway.  Restaurant supplies were

stacked in the garage.  Restaurant-style bench seats were stacked in the living room.

12

Several rooms had cases of bottled water.  Agents also found identification documents that were suspected of being fraudulent.

24.     During administrative processing, agents interviewed **MIGUEL TOJIN-TOJIN** in the Spanish language.  During the interview, **TOJIN-TOJIN** stated, among other things, the following:

     a.     He was born in Guatemala and is a citizen of Guatemala.

     b.     He entered the United States illegally in September 2021 by crossing the desert and going over a wall at the border near El Paso, Texas.

     c.     He began working at K86PV about two and a half or three years ago.

     d.     He was hired by Steven and Steven was his boss.

     e.     He was not asked to show any documents when he was hired and his employer never asked him if he was legally present and allowed to work in the United States.

     f.     He told Steven that he was illegally present in the United States.

     g.     He lived at the RESIDENCE.  Steven gave them a place to live because they worked for him.

     h.     His employer provided food at the restaurant.

    i.     He worked as a dishwasher and a cook Monday through

            Saturday from 10:00 a.m. to 9:00 p.m.

    j.     He was paid $3,200 per month in cash.  He did not pay any

            taxes.

25.    During administrative processing, agents interviewed **CARLOS TOJIN-TUM** in the Spanish language.  During the interview, **TOJIN-TUM** stated, among other things, the following:

    a.     He was born in Guatemala and is a citizen of Guatemala.

    b.     He entered the United States illegally on September 22, 2021, by

            walking through the desert and crossing the border at Arizona.

    c.     He began working at K86PV about two years and seven months

            ago.

    d.     He was hired and supervised by a person he knew only as "boss."

    e.     He was not asked to show any documents when he was hired.

    f.     His employer asked him if he was legally present and allowed

            to work in the United States and he told his boss that he was

            new here and here illegally.  His boss said that because he was

            here illegally, he would be employed for a few days.

    g.     When asked for his address in the United States, he said, "I

            don't have and address.  I live with my boss."  His friend

14

helped him with the living arrangements and the boss said he could live at the RESIDENCE.  He did not pay any rent.

h.      He was unsure who the owner of the house was, but said that it could be the boss.  There were four Guatemalans who lived at the RESIDENCE, all of whom slept in the living room.  There were also two Chinese workers who lived there, one of whom was female, and they all had their own room.

i.      His employer provided food for free.

j.      The boss transported him between the RESIDENCE and K86PV, and when the boss was not there the boss's father took them.  He did not have to pay for the transportation.

k.      He worked Tuesday through Sunday from 11:00 a.m. to 10:00 p.m.

l.      He worked as a dishwasher and was paid $2,000 per month in cash.  He did not pay any taxes.

26.     During administrative processing, agents interviewed **SANDHYA KC** in the English language.  During the interview, **KC** stated, among other things, the following:

a.      She was born in Nepal and is a citizen of Nepal.

15

b.  She entered the United States legally on December 26, 2016, on a commercial flight into Dallas, Texas, using a valid F1 (student) visa to attend the University of Central Oklahoma.

c.  She overstayed the visa but she has submitted an application for legal status to United States Citizenship and Immigration Services through an attorney.  She never had authorization to work in the United States legally.

d.  She traveled from Texas to Jacksonville in 2018 because her cousin lives in Jacksonville.

e.  She began working at K86PV about four and a half months ago.

f.  She was hired and supervised by a man they called Steven.  She said that she did not know his Chinese name.  When shown pictures of **KE**, she said the pictures looked like him but now he was older.

g.  She did not show any documents when she was hired.  Steven asked her for her social security number, which she had gotten when she was at the Oklahoma college, and she provided it to him.

h.  Her employer did not ask her if she was legally present and allowed to work in the United States and she never told her

16

employer that she was illegally present and not allowed to work in the United States.

    i.     She lived at the RESIDENCE. She asked Steven for a place to live and he offered her the room. She did not pay any housing costs.

    j.     Her employer provided food at the restaurant for free.

    k.     She worked from 11:00 a.m. to 2:30 p.m. and from 4:30 p.m. to 9:30 p.m.

    l.     She worked as a server and on a typical day she made about $250. She paid taxes on her earnings.

27. Because **MIGUEL TOJIN-TOJIN**, **CARLOS TOJIN-TUM**, and **SANDHYA KC** are illegally present in the United States, they will be either deported or released pending immigration proceedings and, in either event, if they are not arrested as material witnesses, it is likely that they could not or would not appear to testify in the criminal case against **KE** pursuant to subpoenas.

28. Based upon the foregoing facts, your affiant believes there is probable cause to establish that from an unknown date but no later than in or about June 2023 through on or about August 14, 2024, in the Middle District of Florida, **HUA YAO KE** harbored aliens who were unlawfully present in the United States, for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (a)(1)(B)(i), and that **MIGUEL TOJIN-TOJIN, CARLOS**

**TOJIN-TUM**, and **SANDHYA KC** are material witnesses for whom material

witness arrest warrants should be issued, pursuant to 18 U.S.C. § 3144.

_____
Matthew A. Zetts Jr.
Border Patrol Agent
United States Border Patrol

Sworn to and subscribed before me
this ___19___ day of August, 2024.

_____
United States Magistrate Judge

18